Patrice L. Bishop (182256)
service@ssbla.com
**STULL, STULL & BRODY**
10940 Wilshire Boulevard
Suite 2300
Los Angeles, CA  90024
Tel:    (310) 209-2468
Fax:   (310) 209-2087

[Additional Counsel Appear on Signature Page]

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SOUTHERN DIVISION**

| | |
|---|---|
| SHARON PAGE, on Behalf of Herself All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>IMPAC MORTGAGE HOLDINGS, INC., JOSEPH R. TOMKINSON, WILLIAM S. ASHMORE, JAMES WALSH, FRANK P. FILIPPS, STEPHAN R. PEERS, WILLIAM E. ROSE, LEIGH J. ABRAMS, GRETCHEN D. VERDUGO, SHERALEE URBANO, THE IMPAC MORTGAGE HOLDINGS, INC. EMPLOYEE COMPENSATION AND BENEFITS COMMITTEE, and DOES 1 through 20,<br><br>Defendants. | CASE NO. SACV07-1447 AG (MLGx)<br><br>**CLASS ACTION**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:   September 14, 2009<br>Time:  10:00 a.m.<br>Dept.: Courtroom 10D<br>Judge: Hon. Andrew Guilford |

# TABLE OF CONTENTS

I. The Process For Court Review And Approval Of The Proposed Settlement ... 1
  A. The Court Granted Preliminary Approval on July 1, 2009 .............................. 1
  B. The Class Received Notice of the Settlement ................................................. 1
II. The Court Should Grant Final Approval To The Settlement .......................... 3
  A. The Settlement is on Behalf of a Certified Class .............................................. 3
    1. The Settlement Agreement Meets The Judicial Standards For Final Approval Under Rule 23 ........................................................................................ 3
      A. The Strength of the Plaintiff's Case ............................................. 4
      B. The Risk, Expense, Complexity and Likely Duration of Further Litigation ................................................................................................................. 5
      C. The Settlement Amount ............................................................... 5
      D. The Stage of Proceedings Vis-à-Vis the Settlement Timing ...... 7
      E. The Experience of Counsel ......................................................... 7
      F. Reaction of Class Members to the Settlement ............................ 8
III. The Court Should Grant Final Approval To The Plan Of Allocation ........... 8
IV. Settlement Approval By An Independent Fiduciary ....................................... 9
V. CONCLUSION ................................................................................................ 10

# TABLE OF AUTHORITIES

**Cases**

*Ahern v. Central Pac. Freight Lines*,
   846 F.2d 47 (9th Cir. 1988) .................................................................................. 3

*Boyd v. Bechtel Corp.*,
   485 F. Supp. 610 (N.D. Cal. 1979) ...................................................................... 8

*Carson v. American Brands, Inc.*,
   450 U.S. 79 (1981) ............................................................................................... 4

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ............................................................................. 4

*In re Broadwing, Inc. ERISA Litig.*,
   No. 1:02-cv-00857, 2006 U.S. Dist. LEXIS 72609 (S.D. Ohio Oct. 5, 2006) ......... 8

*In re Global Crossing Sec. and ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ......................................................................... 8

*In re Immune Response Sec. Litig.*,
   497 F. Supp. 2d 1166 (S.D. Cal. 2007) ................................................................ 7

*In re Pacific Enter. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) .................................................................................. 8

*In re Washington Public Power Supply Sys. Sec. Litig.*,
   720 F. Supp. 1379 (D. Ariz. 1989) ...................................................................... 3

*In re WorldCom, Inc. ERISA Litig.*,
   No. 02-CV-4816, 2004 U.S. Dist. LEXIS 20671 (S.D.N.Y. Oct. 18, 2004) ............ 8

*Maher v. Zapata Corp.*,
   714 F.2d 436 (5th Cir. 1983) ............................................................................... 3

*Molski v. Gleich*,
   318 F.3d 937 (9th Cir. 2003) ............................................................................... 4

*Mullane v. Central Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) ............................................................................................. 2

*National Rural Telecomms. Coop. v. DIRECTV, Inc.*,
 221 F.R.D. 523 (CD. Cal. 2004) ................................................................... 5, 7, 8
*Officers for Justice v. Civil Serv. Comm'n.*,
 688 F.2d 615 (9th Cir. 1982) ................................................................................ 4
*Page v. Impac Mortg. Holdings, Inc., et al.*,
 No. SACV 07-1447 AG (MGLx), 2009 WL 890722 (C.D. Cal. Mar. 31, 2009) .... 5
*Rodriguez v. West Publ'g Corp.*,
 No. 05- 3222, 2007 WL 2827379 (C.D. Cal. Sept. 10, 2007) ...................... 4, 5, 7, 8
*Speed Shore Corp. v. Denda*,
 605 F.2d 469 (9th Cir. 1979) ................................................................................ 3
*United States v. McInnes*,
 556 F.2d 436 (9th Cir. 1977) ................................................................................ 3
*Weinberger v. Jackson*,
 No. C-89-2301, 1991 U.S. Dist. LEXIS 3938 (N.D. Cal. Mar. 19, 1991) ............... 2
*Whitford v. First Nationwide Bank*,
 147 F.R.D. 135 (W.D. Ky. 1992) .......................................................................... 2
*Young v. Polo Retail, LLC*,
 No. 02-4546, 2006 WL 3050861 (N.D. Cal. Oct. 25, 2006) .................................. 4

Plaintiff Sharon Page, individually and as Class Representative ("Plaintiff"), brings this motion pursuant to Fed. R. Civ. P. 23(e) seeking Final Approval of a proposed Class Action Settlement agreement dated June 2, 2009 (the "Settlement"). After issuance of Class Notice, no objections to the proposed Settlement have yet been submitted. See Declaration of Edwin J. Mills ("Mills Decl.") ¶ 5.

## I. The Process For Court Review And Approval Of The Proposed Settlement

### A. The Court Granted Preliminary Approval on July 1, 2009

On June 19, 2009, the parties formally presented the Settlement to the Court and asked the Court to grant preliminary approval under Fed. R. Civ. P. 23(e) [Docket Entry ("DE") 62]. The Court granted Preliminary Approval on July 1, 2009 [DE 63], and approved a form of Class Notice on July 1, 2009 [DE 63].

As a preliminary matter, the Court found that the Settlement provisions recovering no less than $300,000 common stock ("Common Stock Settlement Amount")[1] for the Class was fair, adequate, and reasonable.

### B. The Class Received Notice of the Settlement

Plaintiff provided notice of the Settlement to the Class in accord with the Court's instructions. Specifically, Plaintiff caused the Court-approved Class Notice to be mailed, by first-class mail, postage prepaid, to the last known address of each member of the Settlement Class who was identified in Exhibit 1 to the Stipulation of Settlement provided by the Defendants. *See* Affidavit of Jonathan L. Jocson Regarding Dissemniation of Notice to the Class ("Jocson Aff."). Pursuant to the

---

[1] The Common Stock Settlement Amount is in common shares of Impac Mortgage Holdings, Inc. ("Impac" or the "Company"). Impac also agreed to make available to any and all members of the Settlement Class, free of charge, investment training classes, taught by a retirement plan investment professional selected by Impac, at or near the Impac headquarters in Irvine, California, once per month for a period of one year following the date of Complete Settlement Approval. Further, Impac agreed to certain therapeutic changes to the Plan, which are discussed below.

1

1. Court's July 1, 2009 Order, Plaintiff also caused the Class Notice to be published (no later than 45 days before the Fairness Hearing) on the website identified in the Class Notice.  *See* Declaration Of Thomas J. McKenna in Support of Motion for Final Approval ¶ 26.  Such method of notice is routinely found by courts to meet due process standards.  *See Whitford v. First Nationwide Bank*, 147 F.R.D. 135, 139 (W.D. Ky. 1992) ("the mailing of the notice of the proposed settlement agreement and the fairness hearing was the best notice practical under the circumstances" where "the names and last known addresses of all class members were available from the defendant's business records" (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315, 70 S. Ct. 652, 94 L. Ed. 865 (1950))); *Weinberger v. Jackson*, No. C-89-2301, 1991 U.S. Dist. LEXIS 3938, at * 5-6 (N.D. Cal. Mar. 19, 1991) (mailing of settlement notice to the class "constituted valid, due, and sufficient notice to members of the Class").

As provided in the Settlement, Impac provided Plaintiff with the names and last known addresses of the members of the Settlement Class for purposes of providing Class Notice, which represented information obtained from the duly-appointed recordkeeper for the ERISA Plan at issue.

Plaintiff retained administar, a class action claims administrator, to assist in providing Class Notice.  Using the mailing lists provided by Impac and the Plan's recordkeepers, administar mailed 398 notices on or before July 31, 2009.  Jocson Aff.

Per the Court's Order, Class Notice also was disseminated through internet posting.  Counsel posted copies of the Notice and other case documents on at www.ssbny.com.  *See* Declaration Of Thomas J. McKenna in Support of Motion for Final Approval ¶ 26.  Plaintiff's counsel also provided a toll free number in which Class members could call and inquire about the Settlement.

2

## II. The Court Should Grant Final Approval To The Settlement

### A. The Settlement is on Behalf of a Certified Class

The Plaintiff in this case, Ms. Page, is a former participant in the Impac Companies 401(k) Savings Plan (the "Plan"), which is a plan established and operated under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, *et seq.* This action was filed in this Court in 2007. [DE 1]. Stull Stull & Brody ("Stull Stull") and Gainey & McKenna were appointed Lead Counsel for the Settlement Class by Court Order on July 1, 2009 [DE 63].

This Court preliminarily certified a Class for Settlement purposes of:

> All persons who are Participants in or beneficiaries of the Plan at any time between May 6, 2006 and the present (the "Class Period") and whose accounts included investments in Impac Mortgage Holdings, Inc. ("Impac" or "IMH") Stock.

[DE 63].

#### 1. The Settlement Agreement Meets The Judicial Standards For Final Approval Under Rule 23

"The Ninth Circuit is firmly 'committed to the rule that the law favors and encourages compromise settlements.'" *Ahern v. Central Pac. Freight Lines*, 846 F.2d 47, 48 (9th Cir. 1988) (quoting *United States v. McInnes*, 556 F.2d 436, 441 (9th Cir. 1977)). "There is an overriding public interest in settling and quieting litigation." *Id.*; *see also Speed Shore Corp. v. Denda*, 605 F.2d 469, 473 (9th Cir. 1979). Because Settlement is "the preferred means of dispute resolution" in complex cases, *In re Washington Public Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1387 (D. Ariz. 1989), courts "do not lightly reject such settlements." *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983).

Courts afford a presumption of fairness to a settlement if "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of

1 the settlement are experienced in similar litigation; and (4) only a small fraction of the class object[s]." *Rodriguez v. West Publ'g Corp.*, No. 05- 3222, 2007 WL 2827379, at *7 (C.D. Cal. Sept. 10, 2007) (citing 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 11.41 (4th ed. 2002)); *Young v. Polo Retail, LLC*, No. 02-4546, 2006 WL 3050861, at *5 (N.D. Cal. Oct. 25, 2006).

Here, the Settlement has every appearance of fairness: (1) It was achieved through exhaustive arm's-length negotiations; (2) It was achieved after the Court had issued an order on a full briefing of a motion to dismiss; (3) Plaintiff's counsel are highly experienced in this sort of litigation; and (4) There is no opposition to the Settlement.

In reviewing a proposed class settlement, the Court does "not decide the merits of the case or resolve unsettled legal questions." *Carson v. American Brands, Inc.*, 450 U.S. 79, 88 n.14, 101 S. Ct. 993, 67 L. Ed. 2d 59 (1981); *see also Officers for Justice v. Civil Serv. Comm'n.*, 688 F.2d 615, 625 (9th Cir. 1982). The Settlement as a whole must be examined for overall fairness, and the settlement must stand or fall in its entirety. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

The Ninth Circuit has articulated eight factors that a court is to consider when evaluating a settlement's fairness, adequacy, and reasonableness. *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003); *Hanlon*, 150 F.3d at 1026. The factors are enumerated below:

### A. The Strength of the Plaintiff's Case

Plaintiff contends that her case is strong on the merits. Plaintiff alleges that Impac breached its fiduciary duties to the Plan by countenancing continued Plan investments in Company stock at the same time the Company was overstating its financial results by failing to write-down the value of certain of the loans in its portfolio as these loans had declined substantially in value. It was this conduct that rendered such investments imprudent. Plaintiff also alleges that Defendants were

1  Plan fiduciaries, had personal knowledge of the Company's improper practices, and
2  were likewise imprudent in countenancing continued Plan investments in Company
3  stock. Plaintiff's claims were strong enough to withstand in part Defendants'
4  motion to dismiss. *See Page v. Impac Mortg. Holdings, Inc., et al.*, No. SACV 07-
5  1447 AG (MGLx), 2009 WL 890722 (C.D. Cal. Mar. 31, 2009).

6  Further, Plaintiff believes that she had a significant chance at defeating a
7  motion for summary judgment and success at trial. At the same time, however,
8  Plaintiff recognizes that continued litigation presents significant risks for an adverse
9  outcome. The law in this area is still evolving, making it difficult to predict
10 outcomes with any certainty.

### B. The Risk, Expense, Complexity and Likely Duration of Further Litigation

Further litigation presents a significant risk to both sides, as discussed above. If the case had not settled, both sides would need to spend hundreds of thousands of dollars in additional pre-trial preparation. Trial would present numerous complex and novel issues, particularly concerning damages. Trial itself would probably require several weeks of testimony. And given the novelty of the issues, the losing party would be virtually certain to appeal.

These facts tend to favor preliminary approval of the proposed settlement. "[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Rodriguez*, 2007 WL 2827379, at *8 (quoting *National Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (CD. Cal. 2004)).

### C. The Settlement Amount

The settlement amount for the Class is no less than $300,000 common stock for the Class. The parties also agreed that Impac would make available to any and all members of the Settlement Class, free of charge, investment training classes, taught by a retirement plan investment professional selected by Impac, at or near the

5

1  Impac headquarters in Irvine, California.  Further, significant therapeutic changes to
2  the Plan have also been agreed to by the parties.  For example, within ten (10) days
3  after Complete Settlement Approval, Impac agrees to the make following
4  amendments to the Impac Funding Corporation 401(k) Profit Sharing Plan, As
5  Amended and Restated Effective January 1, 2001 ("Plan Document"):

<u>Payment of Administrative Expenses</u>.  Section 10.4 of the Plan Document shall be amended to read as follows:  "The administrative and other expenses of the Plan shall be paid by the Employer through December 31, 2010.  After December 31, 2010, the administrative and other expenses of the Plan shall be paid out of the Trust Fund unless paid by the Employer."

<u>Reallocation of Forfeitures</u>.  Section 4.8(b) of the Plan Document shall be amended to read as follows:  "Through December 31, 2010, the total amount of forfeitures determined in accordance with (a) above with respect to any Plan Year shall be used to defray the expenses of the Plan.  After December 31, 2010, the total amount of forfeitures determined in accordance with (a) above with respect to any Plan Year shall be used to reduce future Employer Contributions or to defray the expenses of the Plan."

As shown in the Mills and McKenna Declarations. The parties engaged in arm's-length negotiations over the course of several weeks to resolve both monetary and non-monetary terms of the Settlement.  This factor favors approval of the Settlement.

|   |   |
|---|---|
| 1 | **D. The Stage of Proceedings Vis-à-Vis the Settlement** |
| 2 | **Timing** |

It is appropriate to consider whether sufficient fact-finding and discovery has taken place to enable Counsel and the Court to act intelligently in entering into and approving a settlement's terms. Conte & Newberg, *supra*, at § 11.41. "A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *Rodriguez*, 2007 WL 2827379, at *9 (quoting *National Rural Telecomms. Coop.*, 221 F.R.D. at 528). Plaintiff's counsel conducted a thorough investigation into the facts, circumstances, and legal issues associated with the Action. This investigation has included: (i) inspecting, reviewing, and analyzing documents produced by or otherwise relating to Impac, including numerous public documents, including, but not limited to, press releases and regulatory filings; (ii) researching the applicable law with respect to the claims asserted in the Action and the potential defenses thereto; (iii) inspecting, reviewing, and analyzing numerous documents concerning the Plan and the administration of the Plan, particularly as such documents pertain to the investment by the Plan in employer stock; (iv) participating in numerous face-to-face and telephonic meetings with Defendants' counsel and in settlement negotiations.

Here, the parties had engaged in "significant informal discovery and investigation on the matters alleged," sufficient to provide them with "a clear view of the strengths and weaknesses of their case[ ]." *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007).

**E. The Experience of Counsel**

As shown in the Mills Declaration, Class Counsel are highly experienced in litigating and settling ERISA breach of fiduciary duty claims in cases similar to this one. Based on this broad experience, as well as the specific considerations presented under the facts and circumstances of this particular case, Class Counsel have concluded that the Settlement is fair, reasonable, and adequate, and should be

presented to the Court for approval. This factor tends to support approval of the Settlement. *In re Pacific Enter. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995) ("Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation."); *Rodriguez*, 2007 WL 2827379, at *9 ("In assessing the adequacy of the terms of a settlement, the trial court is entitled to, and should, rely upon the judgment of experienced counsel for the parties."); *National Rural Telecomms. Coop.*, 221 F.R.D. at 528 ("'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation."); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) ("The recommendations of plaintiffs' counsel should be given a presumption of reasonableness").

### F. Reaction of Class Members to the Settlement

After comprehensive notice to the Class, no objections have been filed as of the filing. This factor supports approval of the Settlement. *See In re Broadwing, Inc. ERISA Litig.*, No. 1:02-cv-00857, 2006 U.S. Dist. LEXIS 72609, at *21 (S.D. Ohio Oct. 5, 2006) ("The small number of objectors is a good indication of the fairness of the settlement") (citations omitted); *In re WorldCom, Inc. ERISA Litig.*, No. 02-CV-4816, 2004 U.S. Dist. LEXIS 20671, at *15-16, *31 (S.D.N.Y. Oct. 18, 2004); *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 457-58 (S.D.N.Y. 2004) ("the number of objections as a percentage of the total class size is vanishingly small . . . [t]he virtual absence of objections and opt-outs [in the related securities case] . . ., and the scope and complexity of the settlement, constitutes a ringing endorsement of the settlement by class members").

### III. The Court Should Grant Final Approval To The Plan Of Allocation

The Settlement Shares will be divided among the members of the Settlement Class on a pro rata basis reflecting such members' interest in the Impac Stock Fund during the Class Period.

1  The Court has preliminarily approved a formula for calculating such
2  members' payment, which provides as follows:

>  The portion of the Settlement shares to be allocated to the
>  Plan account of each member of the Settlement Class shall
>  be calculated as set forth in the table attached as Exhibit 1
>  to the Stipulation of Settlement, on file with the Court.
>  Exhibit 1 attached to the Stipulation of Settlement provides
>  a percentage for each member of the Settlement Class
>  based on such members' proportionate share of the total
>  loss of the value of the Plan's holding of IMH Stock
>  during the Class Period.

12 Class Members have tacitly endorsed the Plan of Allocation. The Plan of
13 Allocation was attached to and incorporated by reference in the Settlement (posted
14 in full on the internet) and the Class Notice webpage featured the Plan of Allocation
15 as a separate document, but no Class Members have expressed opposition to the
16 proposed Allocation Plan. As reflected in the Class Members' support, the Plan of
17 Allocation provides a simple, neutral, and fair structure for allocation of the Net
18 Settlement Proceeds among Class Members' Plan accounts.

### IV. Settlement Approval By An Independent Fiduciary

20 As provided for in the Settlement Agreement, this Settlement has also been
21 approved by an independent fiduciary retained by Impac. Attached to the
22 accompanying McKenna declaration as Exhibit A is the report of the independent
23 fiduciary finding in substance, that the Settlement does not constitute a prohibited
24 transaction under ERISA and that the Settlement provides fair compensation for the
25 release of the Plan's claims in this case.

9

## V. CONCLUSION

The Settlement is an excellent result for the Class in this complex and hard fought ERISA class action. Thus, Plaintiff respectfully requests that the Court enter the Final Approval Order and the Plan of Allocation Order at this time.

Plaintiff will also file at this time a separate motion seeking an award of attorneys' fees and expenses, and an award of Class Representative enhancement award.

Respectfully submitted this 24 day of August, 2009.

**STULL, STULL & BRODY**

By: s/ Edwin J. Mills
Edwin J. Mills
6 East 45th Street
New York, NY 10017
Tel:   (212) 687-7230
Email: emills@ssbny.com

**STULL, STULL & BRODY**
Patrice L. Bishop
10940 Wilshire Boulevard
Suite 2300
Los Angeles, CA  90024
Tel:   (310) 209-2468
Fax:   (310) 209-2087
Email: service@ssbla.com

**GAINEY & McKENNA**
Thomas J. McKenna
295 Madison Avenue, 4th Floor
New York, NY 10017
Tel:   (212) 983-1300
Fax:   (212) 983-0383
E-mail: tjmlaw2001@yahoo.com
          tjmckenna@gaineyandmckenna.com

*Attorneys for Plaintiff*